UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

STEPHANIE MEROLA            :
                                   :
         v.                       :       C.A. No. 11-536A
                                     :
MICHAEL J. ASTRUE,        :
Commissioner of the Social Security   :
Administration                 :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on November 10, 2011 seeking to reverse the decision of the Commissioner. On July 30, 2012, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 12). On August 20, 2012, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 13). Plaintiff filed a reply brief on September 13, 2012. (Document No. 14).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is not substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 13) be DENIED and Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 12) be GRANTED.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 26, 2008 alleging disability as of January 1, 2006.  (Tr. 147-148).  Her date last insured for DIB is December 31, 2010.  (Tr. 16).  The application was denied initially on January 5, 2009 (Tr. 59-61) and on reconsideration on June 11, 2009.  (Tr. 65-67).  Plaintiff requested an administrative hearing on June 19, 2009.  (Tr. 68).  On July 13, 2010, a hearing was held before Administrative Law Judge Martha H. Bower (the "ALJ") at which time Plaintiff, represented by counsel, appeared and testified.  (Tr. 46-56).  A supplemental hearing was held on April 14, 2011 at which time Plaintiff, represented by counsel,  a vocational expert ("VE") and a medical expert ("ME") appeared and testified.  (Tr. 25-45). The ALJ issued an unfavorable decision to Plaintiff on April 19, 2011.  (Tr. 13-24).  On September 8, 2011, the Appeals Counsel denied Plaintiff's request for review; therefore, the ALJ's decision became final.  (Tr. 1-3).  A timely appeal was then filed in this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 2 in finding that she did not have any severe impairments and failed to give appropriate weight to the opinions of treating and examining doctors.

The Commissioner disputes Plaintiff's claims and argues that the ALJ's Step 2 denial is supported by substantial evidence and must be affirmed.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and

Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate

where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The

-4-

court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical

-5-

opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.      Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's

obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing

Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical

sources do not give sufficient medical evidence about an impairment to determine whether the claimant

is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).   In

fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative

examination unless the record establishes that such an examination is necessary to enable the ALJ to

render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st

Cir. 1985).

### D.      The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520,

416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R.

§ 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments

which significantly limit her physical or mental ability to do basic work activities, then she does not have

a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20

C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant

work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her

RFC, age, education and past work) prevent her from doing other work that exists in the national

economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden

of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v.

Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76

L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and
> intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.    APPLICATION AND ANALYSIS

Plaintiff was fifty-one years old at the time of the ALJ's decision.  (Tr. 147).  She has a high school education and fifteen years of past work history as a hospital housekeeper and patient transporter, and one year as a mail handler/clerk.  (Tr. 178, 181).  Her DIB application alleges disability due to debilitating migraines and depression.  (Tr. 177).

Plaintiff received treatment from Dr. Stephen T. Mernoff for headaches between 2001 and 2007. (Tr. 273-299).  During that period, the doctor found that Plaintiff was alert, her attention and affect were full, her mood was good, her executive function and insight were intact, and her speech and language, limb power, coordination, and gait were normal.  Id.  Dr. Mernoff's records indicate that Plaintiff had tried several medications that were ineffective.  (Tr. 275).  He wrote that, "I would not recommend prophylactic medication as the headaches have occurred just once a month in a very predictable fashion. However, they are quite debilitating and it would be ideal if we could find an agent that aborts the headache at onset.  Unfortunately, the headaches are so debilitating she is unable to work when she has the headache."  Id.  Ongoing treatment notes show that Ms. Merola was partially responsive to Zomig. (Tr. 281).  However, Dr. Mernoff noted that Plaintiff "still loses 2-3 days per month" as a result of the headaches.  (Tr. 287).

On September 25, 2006, Plaintiff saw Dr. Parul Shah and did not report having a headache on that day, and reported that she was generally feeling well. (Tr. 222). As treatment, Dr. Shah continued Plaintiff's medication and told her to return in a year, unless she had any new complaints.  Id.  Plaintiff presented to the office again on March 12, 2007, complaining of a headache for the past week, which lasted for a few hours every day.  (Tr. 223).  Dr. Shah observed that Plaintiff's neck was nontender with normal range of motion, and her neurological examination was grossly nonfocal.  Id.  The doctor prescribed Plaintiff Fioricet, and told her to call the office if her headache had not improved in two to

three days.  Id.  Three weeks later, Plaintiff reported that her headache seemed to be under control.  (Tr. 224).

On June 2, 2008, Plaintiff's provider noted that her migraines were well controlled on Propranolol, and she wanted to discontinue Paxil and Trazadone, as she had no problems sleeping.  (Tr. 231-232).  The provider also found that Plaintiff was in no acute distress, she was alert and oriented to three spheres, her extremity range of motion was normal, and her sensation was intact.  (Tr. 232).  Three months later, Plaintiff reported that her headaches were better, and Dr. Shah determined that she was in no acute distress.  (Tr. 234).

Disability Determination Services ("DDS") referred Plaintiff for a psychiatric consultative examination with Dr. Jocelyn Kreiss, which was conducted on October 28, 2008.  (Tr. 246).  Plaintiff reported that while she had been depressed since her boyfriend's death in 1999, she "feels better if she is busy," and "when she is active in life activities, she feels good."  Id.  Dr. Kreiss then noted that Plaintiff denied any problems with concentration, suicidal ideation, significant anxiety symptoms, panic or psychotic symptoms, hallucinations or paranoia.  (Tr. 247).  The doctor further noted that Plaintiff stated that she could cook, pay bills, and shop without difficulty, she had no problems completing tasks, and she spent "her days doing chores and looking for employment."  Id.  On examination, Dr. Kreiss observed that Plaintiff was alert and oriented, she had no psychomotor abnormalities, her speech and language were within normal limits, her mood was euthymic with a congruent affect, and she was able to spell "world" forward and backward without difficulty.  (Tr. 248).  The doctor added that Plaintiff was not experiencing any suicidal ideation, her thought process was linear, her recall was three out of three, her intelligence and fund of knowledge were in the average range, her insight was fair, her judgment was good and her GAF score was 65.  Id.

Dr. Kreiss accurately noted that Plaintiff's medical history included migraine headaches but inaccurately noted that Plaintiff had "no history of seizures or head trauma...[or] of surgeries." (Tr. 247). Contrary to Dr. Kreiss' reported history, however, the records indicate that Plaintiff had a serious head trauma in 1995 resulting from an accident as a passenger on a motorcycle. (Tr. 532). The records also note that Plaintiff underwent a brain ventriculastomy, a neorosurgical procedure, to treat hydrocephalus resulting from this accident. Id. Finally, the records indicate that Plaintiff was being treated for a seizure disorder. Id. Dr. Ruggiano, the ME, testified that knowledge of this medical history may have impacted or altered the way Dr. Kreiss assessed the situation or wrote her report. (Tr. 37-38).

On March 17, 2009, Plaintiff saw Dr. Shah for a follow-up and reported that she was not having a headache on that day. (Tr. 311). Six months later, Plaintiff denied any complaints and stated that she was still trying to find a job. (Tr. 313). Dr. Shah also found that Plaintiff was in no acute distress, and there was no edema in her extremities. Id.

Plaintiff was referred by her attorney to Dr. John P. Parsons for a psychological examination, which was conducted on June 21, 2010. (Tr. 301). Dr. Parsons administered the Weschler Adult Intelligence Scale to Plaintiff, and she achieved a Full Scale IQ of 65. (Tr. 304). The doctor then observed that Plaintiff's mood was depressed, she was mildly apprehensive with occasional palpitations, her thought process was slow, concrete, and distracted, she was mildly confused at times, and she had obsessive thoughts about her boyfriend's death. (Tr. 306). Dr. Parsons also found that Plaintiff's attention and concentration spans were moderately to severely impaired, she had moderate to serious problems with immediate and recent memory, her ability to abstract and her insight and judgment were impaired, her expressive and receptive language skills were consistent with her intellectual ability, she was emotionally constricted, and she had difficulty making decisions. Id. The doctor added that Plaintiff was oriented to three spheres, and there was no evidence of delusions, compulsions or psychotic

symptoms.  Id.  Dr. Parsons concluded that Plaintiff had a GAF score of 45, and she was not capable of maintaining gainful employment.  (Tr. 307-308).

On August 11, 2010, Dr. Shah conducted an annual physical exam and found that Plaintiff was in no acute distress, she had no edema in her extremities, and her sensation was intact.  (Tr. 536).  He noted Plaintiff had chronic migraines.  (Tr. 537).

DDS referred Plaintiff to Dr. Mary L. Lussier for a neurological examination, which was conducted on September 30, 2010. (Tr. 534).  Dr. Lussier noted that Plaintiff had been having migraines headaches since age twenty-two and has them for one week a month during her menses.  Id.  The doctor also noted that Plaintiff obtained some improvement in her symptoms with generic Fiorinal, and she took the medication four times a day, even on days when she did not have a headache.  Id.  Dr. Lussier added that Plaintiff reported that she had been depressed since "2/10 when her boyfriend died," but so long as she was on medication, her "depression has not interfered with her ability to work."  Id.  The doctor noted that Plaintiff took an "excessive amount of sick days from work" and was "fired because of her headaches."  Id.  The doctor then observed that Plaintiff's upper and lower extremity strength were full, her coordination was intact, her gait was normal, and she was generally intact to pinprick except for a slight decrease in her vibratory sense at her right ankle.  (Tr. 535).  Dr. Lussier concluded that Plaintiff's regular use of Fiorinal could lead to withdrawal headaches.  Id.  Plaintiff's records were also reviewed by a non-examining psychologist, Dr. Michael Slavitt, who concluded that her mental impairment was not severe.  (Tr. 250).

### A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 2.  While she concluded that Plaintiff's hypothyroidism, depression/adjustment disorder and migraine headaches were medically determinable impairments, she found that Plaintiff did not have a severe impairment or combination of impairments

as defined in 20 C.F.R. § 404.1521. (Tr. 18). In particular, she concluded that Plaintiff's impairments did not significantly limit her ability to perform basic work activities. Id.

**B.      The ALJ's Step 2 Rejection of Plaintiff's Migraines as a "Non-severe" Impairment is Not Supported by the Record**

The ALJ determined at Step 2 that Plaintiff's impairments were "non-severe" within the meaning of 20 C.F.R. §§ 404.1520(c). An impairment is not "severe" when it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28. "The step two inquiry is a de minimis screening device used to dispose of ground-less or frivolous claims." Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)); see also List v. Apfel, 111 F. Supp. 2d 103, 110 (D.R.I. 2000).

The "slight abnormality" standard requires that "[a] claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities." SSR 85-28 at p. 3. "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." Id.

While the evidence of disability in this case is mixed, this record plainly does not support the ALJ's Step 2 finding that Plaintiff's chronic migraines are not a "severe" impairment as defined in 20 C.F.R. § 1520(c). Plaintiff has a long documented history of debilitating migraine headaches which render her unable to perform basic work activities for several days per month. In her October 3, 2010 report, Dr. Lussier, a DDS examining consultant, indicated that the migraines "last essentially one week" per month during which Plaintiff is nauseous, intolerant to light and sound, and "she spends most of that

week in bed." (Tr. 534).  On August 11, 2010, Dr. Shah, a treating physician, noted that Plaintiff continues to have headaches.  (Tr. 536).  Further, on June 16, 2010, Dr. Shah indicated that Plaintiff's reports of monthly headaches, lasting up to one week, and the need to lie down, away from light and noise during such headaches were consistent with his knowledge of Plaintiff, treatment of her and general medical expertise.  (Tr. 300).  Dr. Mernoff, a treating Neurologist, noted as early as 2004 that Plaintiff was losing two to three days per month due to migraines.  (Tr. 287).  Consistent with the medical records, Plaintiff testified that her migraines were monthly and lasted three to five days, and that she lost her prior hospital employment in 2004 due to excessive absenteeism related to the migraines.  (Tr. 28, 54).  The ALJ did not directly discuss this testimony in her decision or otherwise call its credibility into question. Furthermore, the VE testified that two or more absences on a monthly basis would preclude the available unskilled employment he identified.  (Tr. 44).

Although the non-examining physicians did not find Plaintiff's migraines to be a severe impairment, (Tr. 264, 267), they reviewed the records in 2008 and 2009 and did not have the benefit of reviewing later medical records and, most significantly, Dr. Shah's 2010 opinion and the consultative examination and report completed by Dr. Lussier, a Neurologist, in 2010.  Finally, the ME who testified before the ALJ was a Psychiatrist, and he opined mainly on Plaintiff's depression.  (Tr. 35-37).  In fact, the ME did not address the issue of migraines other than to mention that Plaintiff was treated by Dr. Mernoff, a Neurologist, from 2001 to 2007 and that "headache is mentioned much more frequently in his records."  (Tr. 39).  In other words, the ME did not provide any relevant expert opinion to the ALJ regarding the severity of Plaintiff's migraines.

## IV.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 13) be DENIED and Plaintiff's Motion to Reverse the

Decision of the Commissioner (Document No. 12) be GRANTED.  Final judgment shall enter in favor

of Plaintiff remanding this case for further administrative proceedings consistent with this decision.


   /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 26, 2012